# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CARDONA, | : | CIVIL NO. 3:12-CV-753 |
| Petitioner, | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| B.A. BLEDSOE, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

I. **Statement of Facts and of the Case**

  A. **Introduction**

In this case we are called upon to consider the merits of the petitioner's claims that federal prison disciplinary hearing findings should be set aside because they do not comport with the requirements of the constitution. Specifically, the petitioner, Jose Cardona, a federal inmate, invites us to examine the results of a prison disciplinary hearing which led to the forfeiture of good time for this federal prisoner. Because we find that Cardona fundamentally misconstrues the law, further conclude that Cardona was afforded a full panoply of procedural protections in this disciplinary hearing, and finally believe that there is sufficient evidence to support the prison's finding of misconduct, it is recommended that this petition be denied.

### B. DHO Proceedings

The pertinent facts can be simply stated:

The petitioner, Jose Cardona, is serving a 480-month sentence by the United States District Court for the Western District of Texas, for Conspiracy to Possess with Intent to Distribute Marijuana and Heroin. (Doc. 10, Declaration of Lori Cunningham Ex. 1 ¶ 2.) Cardona's projected release date is June 24, 2037, via good conduct time release. (Id.)

On June 30, 2011, a correctional officer, Officer Johnson, reported that, as he tried to place Cardona in hand restraints to receive a cell mate, Cardona stated, "if you try to put him in here I will fuck him up." Staff then ordered Cardona to cuff up, or submit to hand restraints, and Cardona replied, "I will fuck him up and the team. I'm done talking." (Id., Incident Report ¶ 11 Attach. 1 to Ex. 1.) On the basis of these profane statements, Cardona was cited by Officer Johnson and was charged with an infraction of prison rules, threatening another person. (Id.)

On July 1, 2011, an investigating lieutenant met with Cardona and provided him with a copy of this Incident Report. (Id.) After documenting Cardona's denial, and noting that Cardona displayed a poor attitude, the lieutenant referred this matter to the prison Unit Disciplinary Committee (UDC) for an initial hearing. (Id.)

That UDC proceeding was conducted on July 2, 2011. (Id.) In the course of these proceedings Cardona was provided a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing Form. (Id Notice of Disciplinary Hearing, Attach. 1 to Ex. 1). At the conclusion of this initial UDC hearing, the UDC referred the charge to the prison Disciplinary Hearing Officer (DHO) for a final disciplinary hearing. (Id.)

This DHO hearing was then conducted on August 15, 2011. (Id., Discipline Hearing Officer Report, Attach. 2 to Ex. 1). At the outset of the hearing, the DHO advised Cardona of his rights in connection with this proceeding and Cardona indicated he understood these rights. (Id.) Cardona then actively exercised his rights in the course of DHO proceedings, seeking the assistance of a staff representative, making a statement on his behalf, and soliciting and presenting evidence for consideration by the DHO. (Id.)

This evidentiary presentation by Cardona disclosed that, in addition to the reporting officer, Officer Johnson, one other correctional officer, Officer Zimmerman, heard Cardona threaten to harm any inmate placed in his cell. Both of these correctional staff reported that Cardona had stated, in substance, that "if you try to put him in here I will fuck him up." (Id.) Cardona was permitted, however, to elicit evidence that another correctional officer, Officer Weaver, had reported that he had

3

not heard this remark, due to the fact that he had departed the area while this verbal exchange was on-going. (Id.) In addition, the DHO allowed Cardona to detail his claim that this entire disciplinary episode was fabricated in order to retaliate against the petitioner. (Id.)

After allowing Cardona this full opportunity to develop this defense to the disciplinary citation, upon consideration of all of the evidence, the DHO determined that Cardona had committed the prohibited act of threatening another. (Id.) In reaching this decision, the DHO documented the specific evidence he relied upon explaining that his decision was based upon witness statements, including the statement of Officer Zimmerman, who confirmed that Cardona made this threat, as well as the reporting officer's eyewitness written account. (Id.)

The DHO also considered, but discounted, Cardona's claims of fabrication of this entire episode by prison staff, observing that the officers had no motive to fabricate this report and had a positive motive to accurately report the incident since fabrication of incident reports could lead to disciplinary action against prison staff. (Id.) The DHO further found that there was no material inconsistency between the reports of Officers Johnson and Zimmerman, who stated that they heard Cardona threaten violence, and Officer Weaver, did not report hearing any such threat, since Officer Weaver had left the scenes while this exchange was on-going. (Id.) Finally,

4

in assessing the evidence, the DHO considered, but discounted, Cardona's denial, finding Cardona's statements on this score were not fully credible. (Id.)

The DHO then sanctioned Cardona for this infraction by ordering: (1) disallowance of 27 days good conduct time; (2) disciplinary segregation for 30 days; (3) Loss of 90 days Visitation Privileges; and (4) Loss of 90 days Commissary Privileges. (Id.)

Dissatisfied with the outcome of these disciplinary proceedings, Cardona then filed the instant federal habeas corpus petition. (Doc. 1.)

## II. Discussion

### A. This Petition Fails on Its Merits

Considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition Cardona launches a two-fold constitutional assault upon these prison disciplinary decisions, challenging the disciplinary process generally on procedural due process grounds, and asserting that the decisions were substantively flawed since there was insufficient evidence to support a finding of misconduct on his part. Yet, Cardona faces an exacting burden of proof in advancing these two constitutional claims.

1.  **<u>Procedural Standards for DHO Hearings</u>**

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. <u>Id.</u> at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. <u>Meyers v Alldredge</u>, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." <u>Meyers</u>, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced

by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. See e.g., Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009); Townsend v. Warden, FCC Lewisburg, 3:CV-12-0636, 2013 WL 371930 (M.D. Pa. Jan. 30, 2013)("generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation, citing Lasko, 334 F. App'x at 476.) Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.14. After investigation, the incident report is referred to a Unit Discipline Committee

(UDC) for an initial hearing. 28 C.F.R. §541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.18. The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. §541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.17(b).

The inmate also has a series of procedural rights at the hearing itself. Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.17(c), the DHO shall call

8

those witnesses who have information directly relevant to the charges and who are reasonably available. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.17(d).

In addition, the regulations prescribe procedural standards for DHO decision-making. Thus, the regulations require that the DHO must consider all evidence presented at the hearing. The decision of the DHO must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.17(f). Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. §541.17(g).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir.

9

2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

## 2. **Substantive Standards Governing DHO Decisions**

In his habeas petition, Cardona also attacks the substance of the DHO decision, arguing that there was insufficient evidence to support any finding of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in these disciplinary hearings must meet a demanding legal standard to succeed. A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Accordingly, in order to pass constitutional muster a "disciplinary decision must [simply] be supported by 'some evidence,' that is, 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011). Therefore, it is well settled that the decision of

the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we need not examine the entire record, re-weigh the evidence, or independently assess

11

witness credibility in assessing whether the 'some evidence' standard is met.") Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501; Freeman, 826 F.2d at 954. In practice, courts have rarely condemned correctional disciplinary decisions as being wholly lacking in evidentiary support, and have frequently concluded that disciplinary findings are supported by the requisite degree of proof. See e.g., McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012); Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011); Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

      **B.**    **Cardona Was Afforded His Procedural Due Process Rights at the DHO Hearings, and the DHO Finding of Misconduct Is Supported By Adequate Evidence**

Judged against these standards, Cardona's procedural and substantive challenges to this particular prison disciplinary proceeding simply fails. First, with respect to any procedural due process claims, in this case it is evident that this

prisoner's due process rights were fully vindicated. Cardona received advance, written notice of the proposed disciplinary charges against him. Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses. In this case, Cardona either exercised those rights, or expressly waived the rights he had in connection with this disciplinary hearing. Furthermore, once the hearing was concluded prison officials scrupulously complied with prison regulations, and afforded Cardona his due process rights, by providing him with written decisions outlining the basis of this disciplinary action, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceedings, stripped of its rhetorical excess, Cardona's insistence that he is the victim of a global conspiracy presents little more than a "generalized critique" of staff impartiality, which as a legal matter is insufficient to demonstrate the degree of bias necessary to prove a due process violation. <u>Lasko v. Holt</u>, 334 F. App'x 474 (3d Cir. 2009). Furthermore, the record of these disciplinary proceedings affirmatively reveals that Cardona was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on

and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to Cardona during these proceedings, any procedural due process claims simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can Cardona successfully challenge the substantive outcome of the DHO hearing, since it is apparent that this decision was adequately supported by "some evidence" in the record. Indeed, with respect to this issue, the DHO decisions entailed the most basic of fact-finding determinations: weighing inculpatory evidence against an inmate's blanket denial of any wrongdoing. In this regard two eyewitnesses stated that they heard Cardona make a clear threat, stating: "if you try to put him in here I will fuck him up." Further, the DHO properly discounted the allegedly contradicting staff witness presented by Cardona, Officer Weaver, finding that the officer's statement did not contradict this other evidence since he simply stated that he had left the scene and was not present when the threatening exchange occurred. Therefore, the statements of these two witnesses fully supported the DHO finding, which was

14

carefully detailed and explained to Cardona in the DHO opinion. This finding, in turn, is reasonable given the evidence presented in this case.

Since the "some evidence" standard of "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but only entails a determination "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the DHO is fatal to Cardona's claims in this petition. Accordingly, on these facts, we conclude that there was also some evidence to support this disciplinary finding. Since there is an adequate factual basis for that disciplinary finding, Cardona's substantive challenge to these disciplinary actions should also be rejected. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

### III. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the merits of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be

DENIED, and that a certificate of appealability should not issue. The petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of March 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge